UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL MAXEY,
:
: No. 1:07-cv-158
    Plaintiff,
:
: **OPINION AND ORDER**
:
  v.
:
:
STATE FARM FIRE AND CASUALTY
COMPANY, et al.,
:
:
    Defendants.
:
:
:

This matter is before the Court on (i) Defendants' Motion for Summary Judgment (doc. 62), Plaintiff's Memorandum in Opposition thereto (doc. 71), Defendants' Reply in support thereof (doc. 96), Plaintiff's Sur-Reply (doc. 102) and Defendants' Reply to Plaintiff's Sur-reply (doc. 112); and (ii) Plaintiff's Motion for Summary Judgment (doc. 64), Defendants' Response thereto (doc. 73), and Plaintiff's Reply in support thereof (doc. 94). For the reasons below, the Court GRANTS Defendants' Motion for Summary Judgment (doc. 62) in part; DENIES Defendants' Motion for Summary Judgment (doc. 62) in part; and DENIES Plaintiff's Motion for Summary Judgment (doc. 64). Further, the Court SETS dates for a final pretrial conference and a jury trial.

**I. Background**

This case arises from the effects of a fire that

destroyed Plaintiff's home and vehicle, which were insured by Defendant State Farm Fire and Casualty Company and Defendant State Farm Mutual Automobile Insurance Company, respectively (doc. 1). In brief, after their investigation, Defendants denied Plaintiff's insurance claims, claiming both that Plaintiff materially misrepresented and/or concealed material facts regarding the claim investigation and that Plaintiff failed to cooperate in the investigation (doc. 62). Upon denial of his insurance claim, Plaintiff filed a complaint alleging breach of contract (Counts 1 and 2), bad faith in the refusal to pay the claim (Counts 3 and 4) and conspiracy to deny coverage (Count 5), all in violation of Ohio law (doc. 2). Defendants removed the case to this Court pursuant to 28 U.S.C. §1446(b), and this Court has jurisdiction pursuant to 28 U.S.C. §1332, as Defendants are Illinois corporations and Plaintiff is an Ohio citizen and the amount in controversy exceeds $75,000 (doc. 1).

Some facts in this case are not in dispute. For example, both parties agree that insurance contracts exist between the relevant parties and that contractual duties on both sides therefore arise; that Plaintiff's car caught fire on the night in question; that Plaintiff's house also caught fire that night; that the cause of the house fire was the fire from the car; that the fire destroyed a significant amount of personal property contained in the house and the car (docs. 62 and 64).

However, many factual issues <u>are</u> disputed. For example, the parties have differing perspectives on the condition of the car before the fire, Plaintiff's activities just before the fire, whether Plaintiff entered his home before noticing the fire, whether he blacked out after driving the car home, whether he drove the car at all, where the fire began and whether Plaintiff discontinued cooperation with insurance agents (<u>Id</u>.).

**II. Summary Judgment Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; <u>see</u> <u>also</u>, e.g., <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464 (1962); <u>LaPointe v. United Autoworkers Local 600</u>, 8 F.3d 376, 378 (6th Cir.1993); <u>Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs</u>., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Patton v. Bearden</u>, 8 F.3d 343, 346 (6th Cir. 1993), <u>quoting in part</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)(internal quotation marks

omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an

"alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d

1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**III. Law & Discussion**

**A. Breach of Contract**

Under Ohio law, a breach of contract occurs when there is a binding contract or agreement, the non-breaching party performs its contractual obligations, the other party fails to fulfill its contractual obligations without legal excuse and the non-breaching party suffers damages as a result of the breach. Garofalo v. Chicago Title Ins. Co., 661 N.E.2d 218, 226 (Ohio Ct. App. 1995) (citing Nat'l City Bank v. Erskine & Sons, 110 N.E.2d 598 (Ohio

1953)). Plaintiff must present evidence sufficient to raise a genuine issue of material fact to support each of these criteria in order to survive summary judgment on the breach of contract claim.

### 1. The Parties' Arguments

Neither side contests the existence of valid contracts between Plaintiff and Defendants; nor does either side contest that Plaintiff suffered losses and Defendants did not cover them. Indeed, the only disputed element of this claim is whether Defendants had a legal excuse to not perform their duties under the contracts.

Defendants argue that their refusal to cover Plaintiff's losses was legally excused because (i) Plaintiff failed to cooperate with the investigation of his claim, and (ii) Plaintiff engaged in material misrepresentations and concealed material facts relating to the fire (doc. 61). Defendants contend that Plaintiff's behavior permitted Defendants to avoid their obligations under the contracts because Plaintiff was under a contractual duty to cooperate, and the contracts contained an explicit "Concealment or Fraud" provision (Id.).

With respect to the cooperation issue, Defendants contend that Plaintiff did not sign copies of his examination under oath and did not provide copies of certain requested documents including, inter alia, cellular telephone records, service records for the car, and contact information for anyone who lived with

Plaintiff for the three months prior to the loss (Id.). This, Defendants argue, was violative of the cooperation provisions in the contract (Id.).

Regarding their concealment argument, Defendants contend that the condition of the vehicle prior to the fire goes directly to the value of the loss, which makes it a material fact, and Plaintiff's statements that the vehicle, including the engine, was in "good" condition were either misrepresentations or attempts to conceal the fact that the car's engine had blown a rod (Id.). Defendants point to the investigation conducted by Mark Sargent, a forensic mechanic, who found in his post-fire investigation that the car had a softball-sized hole in it because one of the piston rods had blown through the engine block, which caused the crankshaft to lock (Id.). This, according to Sargent, would have caused a loud banging sound in the lead up to the engine failure and would have culminated in an explosion, something that would have not gone unnoticed by the car's driver (Id.). Indeed, Defendants contend that the car could not have been operated in the condition it was in prior to the fire, which, if true, directly contradicts Plaintiff's statements that he drove the car to his daughter's house and back home immediately before the fire and he noticed no mechanical problems (Id.).

In addition, Defendants argue that Plaintiff's actions just before the fire are material facts because the loss was caused

-8-

by a fire that began near the car and occurred while Plaintiff was present (Id.). Specifically, Defendants note that Plaintiff reported that he arrived home at approximately 1:00 A.M. but that the fire was not reported until 1:39 A.M., which, Defendants contend, leaves nearly forty minutes of Plaintiff's time unaccounted for (Id.). Defendants argue this is relevant because by the time the fire department arrived at 1:48 A.M., the fire had progressed farther than would have been expected if it had started in the car engine, as Plaintiff reported (Id.). Defendants also contend that Plaintiff has made several conflicting reports about his activities just prior to the fire, which undermined his credibility regarding the fire and supported Defendants' decision that Plaintiff was misrepresenting material facts (Id.). In particular, Defendants point to Plaintiff's statement to the local police department on the morning of the fire, where Plaintiff states that he left his daughter's home and arrived at his own at approximately 1:00 A.M. and, after pulling the car into the carport, smelled and saw smoke coming from under the car, and he never entered the home (Id.). In contrast, Defendants contend, when Plaintiff reported the incident to the claims agent, he indicated that he entered the home and spent about thirty or forty minutes inside before he smelled smoke, at which point he went outside, saw smoke and flames coming from the car (Id.). These two statements are different still from deposition statements, and from

statements made to an insurance adjuster, where Plaintiff seemed to indicate that he did not go in the house, or if he did it was only for a short while, but he may have sat down on the front stoop, or he may have noticed the smoke before arriving at the front door (Id.). Defendants argue that these inconsistencies raise a reasonable question about Plaintiff's truthfulness, and lend support to the possibility that the fire did not begin as Plaintiff has claimed (Id.).

In addition, Defendants note that Plaintiff did not initially tell investigators that he believed he had suffered a black out of some duration upon arriving home that night (Id.). Plaintiff first told Defendants that he had "no clue" how he could have driven the car with a blown engine rod (Id.). Six months later, Plaintiff told Defendants that he did not have a memory of anything that took place after leaving his daughter's house until the moment he found himself getting out of his car in his driveway, and Plaintiff hypothesized that he had blacked out upon arriving at his house (Id.). Defendants argue that this blackout story, in addition to being incredible, gave Defendants further reason to disbelieve Plaintiff's account of events because, for example, Plaintiff's statements regarding the time it took him to drive from his daughter's house to his own and the condition of the car just before the fire cannot be credited if Plaintiff was actually in a blacked-out state (Id.). Defendants assert that the blackout

story, if believed, necessarily renders Plaintiff without the capacity to give reliable testimony about the state of the vehicle or his actions just prior to the fire (Id.).

With respect to the accusation that he did not cooperate, Plaintiff claims that Defendants have provided the Court with false statements (doc. 71). He states that he gave many of the requested documents to Defendants on the day of his examination under oath and the remainder at some point after (Id.). For support, he points to the exhibits attached to depositions of certain employees of Defendants, which do indeed appear to be copies of the documents requested by Defendants, although it is not clear when he transmitted this information to Defendants, and there is some evidence on the record to indicate that it may have been after his claims were denied (Id.).

Regarding the accusation of concealment, Plaintiff, in reply and in his Motion for Summary Judgment, disputes that he ever made inconsistent statements regarding whether he entered the house, and offers deposition testimony, including that of the fireman who had to kick in the front door because it was locked, to support this contention (docs. 64 and 71). He contends that the inconsistencies upon which Defendants base their misrepresentation charge are fabricated and argues that, as such, they should not be a basis for excusing Defendants' breach of contract (doc. 71). Similarly, Plaintiff contends that he has consistently stated that

-11-

he did not know the exact time of his arrival that night but has instead consistently given an approximate time; he thus argues that any reliance on supposed "unaccounted for" minutes is misplaced and that the "missing time" is neither a genuine nor a material issue (Id.). Regarding the condition of the car, Plaintiff contends that he did not know the car had blown a rod, asserts that he did drive the car that night home from his daughter's house, and hypothesizes that the car must have blown the rod once he arrived home, after he blacked out (Id.).

With respect to the blackout, Plaintiff argues that telling Defendants about the blackout actually supports his credibility and truthfulness because disclosure of that episode jeopardized his career as a commercial truck driver (Id.). In addition, Plaintiff contends that Defendants have produced no credible evidence that Plaintiff did not black out (Id.).

## 2. Discussion

The Court simply finds that too many factual and credibility issues persist with respect to whether Defendants' non-performance was excusable for summary judgment to be appropriate on Counts One and Two. For example, a disputed factual issue exists with respect to what documents were requested and provided and when. In addition, the condition and use of the car prior to the fire, including whether Plaintiff actually drove it to his daughter's house and back that night, and the actions of Plaintiff

upon his arrival home are material issues, and both sides have adduced evidence sufficient to raise a genuine dispute about them. The same is true with respect to whether Plaintiff's blackout occurred and whether Plaintiff's delay in telling Defendants about his blackout reasonably affected his credibility such that Defendants were excused from performing their obligations under the contract. Indeed, as the parties themselves note, credibility is a key component in this case. The parties repeatedly expressly ask the Court to judge the other's credibility, repeatedly claim that the other side's version of the events of the fire is simply not credible. However, judging credibility is a task for the jury, if not the primary task of the jury, and is not for the Court on a summary judgment motion. <u>Adams</u>, 31 F.3d at 378. At the summary judgment stage, the only question before the Court is whether the parties have adduced evidence such that one side or the other is entitled to judgment as a matter of law because no genuine factual issues exist for the jury. Here, neither Plaintiff nor Defendants have done so with respect to Counts One and Two.

The Court feels that a word about arson is warranted here. Defendants did not plead arson as an affirmative defense, but the implication that arson is suspected is woven throughout Defendants' briefings. Plaintiff argues that such implications are prohibited because of Defendants' failure to plead the defense, and each side questions the other's expert opinion. The Court finds

that, to the extent the cause of the fire is relevant to whether Defendants' breach was excusable, that issue cannot be dispensed with on summary judgment because it is hotly and genuinely disputed. Its relevance at trial will be decided by the Court at the appropriate time.

### B. Breach of Duty of Good Faith

Ohio has recognized that a fiduciary relationship exists in the context of insurance contracts and has therefore recognized a tort for the breach of an insurer's duty to act in good faith in handling the claims of the insured. Hoskins v. Aetna Life Ins. Co., 452 N.E.2d 1315, 1319 (Ohio 1983). However,

> whenever an insurance company denies a claim of its insured, it will not automatically expose itself to an action in tort. Mere refusal to pay insurance is not, in itself, conclusive of bad faith. But when an insured insists that it was justified in refusing to pay a claim of its insured because it believed there was no coverage of the claim, "such a belief may not be an arbitrary or capricious one. The conduct of the insurer must be based on circumstances that furnish reasonable justification therefor."

Id. at 1320 (citing Hart v. Republic Mut. Ins. Co., 87 N.E.2d 347, 349 (1949)). Thus, in order to successfully assert a bad-faith claim against Defendants, Plaintiff must show that Defendants failed to exercise good faith in refusing to pay the claim, by showing that such refusal was based upon circumstances that did not "furnish reasonable justification therefor." Id.; see also Zoppo v. Homestead Ins. Co., 644 N.E.2d 397, 399-400 (Ohio 1994). To be clear, this claim is distinct from the contractual claims of Counts

One and Two.  Counts Three and Four sound in tort and do not automatically arise from any failure to perform a contractual obligation, see Hoskins, 452 N.E.2d at 1320, nor does an absence of contractual liability preclude a finding of tort liability for breach of the duty to act in good faith.  See Penton Media, Inc., v. Affiliated FM Ins. Co., 245 Fed. Appx. 495, 501 (6th Cir. 2007), citing Zoppo, 644 N.E.2d at 400.

In order to grant Defendants' Motion for Summary Judgment as to Plaintiff's bad faith claim, the Court must find after viewing the evidence in a light most favorable to Plaintiff "that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." Tokles & Son, Inc. v. Midwestern Indemn. Co., 605 N.E.2d 936, 943 (Ohio 1992), overruled in part on other gds. by Zoppo, 644 N.E.2d 397.  In order to grant Plaintiff's Motion for Summary Judgment as to the bad faith claim, the Court must find that Plaintiff adduced sufficient evidence showing that, as a matter of law, Defendants did not have a reasonable justification for their denial.  Zoppo, 644 N.E.2d at 400.

Here, Plaintiff appears to argue that Defendants had no reasonable justification for their denial of Plaintiff's claim because Plaintiff cooperated with Defendants' investigation but Defendants did "whatever [they] could to throw up roadblocks" (doc. 64).  As examples of these roadblocks, Plaintiff offers Defendants'

denial of Plaintiff's request for more time to file his proof of claim and Defendants' failure to investigate both the veracity of Plaintiff's blackout and whether he actually drove the car that night; instead, Plaintiff contends, Defendants just assumed he was lying and denied his claims (Id.). Defendants, on the other hand, argue that Plaintiff himself "created the record of inconsistencies and contradictions that formed the foundation" of Defendants' denial (doc. 62). In addition, Defendants contend that their conduct was reasonable because they gave Plaintiff "more than one opportunity to explain the inconsistencies in his statement of the facts" (Id.).

Accepting as true that Defendants did not conduct an investigation into whether or not Plaintiff actually suffered a black out and that they did not interview Plaintiff's co-workers to determine whether they remembered him driving the car to work that day, the Court nonetheless finds that the record cannot support a finding that Defendants, as a matter of law, conducted such an inadequate investigation that they did not have any reasonable justification for their denial of Plaintiff's claims. Neither does Defendants' failure to grant an extension of time to Plaintiff to file his proof of claim prove that they had no reasonable basis for their denial. Indeed, the very issues that defeated the parties' motions for summary judgment regarding the contract claims are the very reasons why Defendants are entitled to summary judgment on the

bad faith claim: the evidence conflicts with respect to the blackout episode, the state of the car prior to the fire and whether it had been driven that night, the origin of the fire, and what Plaintiff's actions were immediately prior to the fire. Some portions of the record could reasonably be construed to support Defendants' arguments; others more readily support Plaintiff's version of events. Therefore, Defendants' denial of Plaintiff's claims, by definition, was "fairly debatable." See Tokles, 605 N.E.2d at 943. In short, Plaintiff has simply not introduced any evidence showing that Defendants' decision was arbitrary or capricious. See id. Plaintiff has made it quite clear that he believes that Defendants' decision was erroneous, and the Court has found that a reasonable jury could find that it amounted to breach of contract, but this does not mean that the decision was either arbitrary, capricious, baseless or otherwise without reasonable justificaiton. Instead, the record shows that Defendants did conduct an investigation of Plaintiff's claims, including using claims representatives to elicit information from Plaintiff and their special investigations unit to employ an origin and cause investigator from a fire consultant firm to ascertain the cause of the fire and a forensic mechanic both to assess the condition of the car prior to the fire and to determine whether the fire originated with the car and to create a background report on Plaintiff and his ex-wife (doc. 62). In addition, Defendants hired

outside counsel both to assist with the investigation and to recommend a course of action regarding Plaintiff's claims (Id.). On these facts, the Court simply cannot find that Defendants' denial was unsupported by reasonable justification. Therefore, Defendants are entitled to summary judgment on Counts Three and Four.

**C. Conspiracy**

The elements of a civil-conspiracy claim in Ohio include (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself. Pappas v. Ippolito, 895 N.E.2d 610, 623 (Ohio Ct. App. 2008).

Neither side briefed the Conspiracy claim with any depth. The Court, however, need not delve into the merits of the claim because in Ohio breach of contract alone cannot serve as the underlying "unlawful act" for a civil conspiracy. See All Erection & Crane Rental Corp. v. Acordia Northwest, Inc., 162 Fed.Appx. 554, 559 (6th Cir. 2006)(upholding conclusion of district court that a contract claim cannot form the basis of a conspiracy claim as "wholly correct")(citing Wagoner v. Leach Co., No. 17580, 1999 WL 961166, *20, 1999 Ohio App. LEXIS 3152, *51 (Ohio Ct. App. July 2, 1999)("[A] party cannot be held liable for conspiring to breach his own contract."(citing Schell v. Kaiser-Frazer Sales Corp., 28 Ohio App. 2d 16, 274 N.E.2d 315, 318 (1971))). The Court having found

that Plaintiff's bad faith claims do not survive Defendants' Motion for Summary Judgment, the only remaining claims are Plaintiff's breach of contract claims. Consequently, the Court GRANTS Defendants' Motion for Summary Judgment as to Count Five, the civil conspiracy claim.

**IV. Conclusion**

Having thoroughly reviewed this matter, the Court finds that genuine issues of material fact exist with respect to Counts One and Two such that summary judgment is inappropriate on those claims. Accordingly, the Court DENIES Defendants' Motion for Summary Judgment (doc. 62) and DENIES Plaintiff's Motion for Summary Judgment (doc. 64) as to those claims. However, the Court finds that no genuine issues of material fact exist with respect to Counts Three, Four and Five and therefore GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment as to those claims. Further, the Court SETS a final pretrial conference for April 1, 2010, at 2:00 P.M. and a three-day jury trial to commence on May 11, 2010, at 9:30 A.M.

SO ORDERED.

Dated: February 2, 2010   /s/ S. Arthur Spiegel
                          S. Arthur Spiegel
                          United States Senior District Judge